**STATE**

v.

**Michael TAYLOR.**

**No. 89–476–C.A.**

Supreme Court of Rhode Island

Nov. 5, 1990.

James E. O'Neil, Atty. Gen., John J. Hogan and Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin and Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

KELLEHER, Justice.

The defendant, Michael Taylor (Taylor), is before us on appeal after a Superior Court jury returned a guilty verdict on a charge that Taylor had committed robbery.

At the trial, the holdup victim testified that on September 26, 1987, he was work-

ing at Arby's sandwich shop, which is located in Providence on Westminster Mall. After his day's work was done, the victim and his two friends spent some time walking around Westminster Mall. Sometime between 6:30 and 7 p.m., a male approached them and tried to sell the trio a bag of marijuana. The victim and his friends were not buying even though the salesman expended great effort in trying to convince them that it was "good stuff." During the salesman's presentation, the victim was able to observe his face at close range.

Shortly after this episode, as the victim and his two companions were walking through an alley to catch a bus, they saw the salesman come out of a sandwich shop located on Dorrance Street. Once again he sought to persuade the trio to buy the marijuana. However, the seller's entrepreneurial efforts came to an abrupt end when he pulled out a gun and demanded money. At this point the seller put the gun to the victim's head and demanded "all bills, no change." The victim surrendered what he had—$23—and the gunman disappeared. This incident was reported to the police.

Time marched on, and several months later the victim recognized the robber entering the rest-room area at Arby's. The police were called, and in due time Taylor was escorted out of the rest-room area. The victim identified Taylor as the same individual who had robbed him in September. The victim also identified Taylor at trial.

Taylor testified on his own behalf and denied that he had ever confronted the victim. He insisted that at that particular time he was working but could not recall specifically whether he had been working on September 26, 1987. However, at no time did he identify his employer.

On appeal Taylor's counsel argues that the trial justice erred in certain rulings he made at various stages of the trial. We turn first to Taylor's claim that the trial justice erred when he refused to declare a mistrial after the prosecutor had argued to the jury.

During his closing argument, Taylor's attorney erroneously stated that Taylor had testified that he had been working at City Lights at the time of the robbery. City Lights is a restaurant that is located some distance from Arby's. Thus defense counsel also implied that the police had not thoroughly investigated the case because there was a lack of any followup investigation by the police regarding Taylor's status at City Lights.

In responding to this turn of events, the prosecutor argued: "There was no testimony that Michael Taylor was working at City Lights, or any place, from this stand. No evidence of that whatever. * * * [N]o evidence whatsoever he was working, or even told the police he was working." Taylor's counsel then sought a mistrial or cautionary instructions because of the prosecutor's comments that, in the defense counsel's opinion, tended to shift the burden of proof so that the jury might believe that Taylor had the responsibility of bringing in the witnesses against him. The trial justice rejected these contentions.

The jury returned a guilty verdict. The trial justice, after denying Taylor's motion for new trial, sentenced him to a forty-five-year term, with thirty years to serve and the execution of the last fifteen years of that sentence to be suspended while Taylor would be on probation.

■ Counsel for Taylor now argues with great vigor that the prosecutor's closing argument left the jury with the indelible impression that Taylor had failed to produce witnesses or present certain evidence. The trial justice, in rejecting this argument, noted that the improper evidence about City Lights was initiated by Taylor's counsel. Taylor's counsel also classified the prosecutor's comments as a clear mischaracterization of the evidence and suggested that those comments were a violation of the so-called empty-chair doctrine. The empty-chair doctrine permits a trial justice to charge a jury that it may draw an inference from a litigant's unexplained failure to produce an available witness who would be expected to give material testimony on the litigant's behalf. This inference is that the witness, had he testified, would have

testified adversely to the litigant. *Anderson v. Friendship Body and Radiator Works, Inc.*, 112 R.I. 445, 447, 311 A.2d 288, 291 (1973). This court was first presented with the question of whether the empty-chair doctrine has any application in criminal cases in *State v. Pailin*, 114 R.I. 725, 339 A.2d 253 (1975). In *Pailin* we chose not to address the issue. *Id.* at 727–28, 339 A.2d at 255.

In *State v. Jefferson*, 116 R.I. 124, 353 A.2d 190 (1976), however, this court adopted the rule in *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197 (1974). In *Jefferson*, this court stated that "a prosecutor may not comment on a defendant's failure to call witnesses." 116 R.I. at 139, 353 A.2d at 199 (quoting *Caron*, 300 Minn. at 127, 218 N.W.2d at 200). Therefore, the empty-chair doctrine has no place in the instant case, which is criminal in nature.

■ This fact having been determined, we are left with the rule that when a defendant complains of allegedly prejudicial remarks made by a prosecutor, it is the obligation of the trial justice to assess the potential for prejudice, if any, inhering in such remarks. It is within the sound discretion of the trial justice to declare a mistrial if he or she believes a mistrial is warranted. However, the ruling of a trial justice is to be afforded great weight and is not to be disturbed on appeal unless clearly wrong. *State v. Lima*, 546 A.2d 770, 774 (R.I.1988) (citing *State v. Mello*, 472 A.2d 302, 304 (R.I.1984)).

■ It is true that the prosecutor's summary of the evidence was erroneous. The error, however, was induced by the defense's improper introduction of facts not in evidence into the closing. In addition, the remarks of the prosecutor were not of the type that have been censured in the past. *Cf. State v. Turner*, 561 A.2d 869, 873 (R.I.1989)(prosecutor speculating, " 'Where is Mr. Saunders? Why didn't we hear from Mr. Saunders? * * * The State doesn't have a lock on that [courtroom] door' ").

Here the prosecutor correctly pointed out that there was no evidence that Taylor had been working at City Lights, but he incorrectly continued to say there was no evidence that Taylor had been working anywhere at all. It is submitted that, in context, this remark was not a suggestion that Taylor should have presented witnesses regarding his employment. Moreover, any harm that might have been caused by this error was cured by the trial justice's admonishment to the jury that comments of counsel are not evidence and that Taylor did not have to prove anything.

■ Another facet of Taylor's appeal concerns his contention that the repeated references to his attempts to sell marijuana to the victim should have been excluded. Rules 402 and 403 of the Rhode Island Rules of Evidence provide that all relevant evidence is admissible, even though it may be excluded if its probative value is outweighed by the danger of unfair prejudice. Rule 404(b) provides that evidence of other crimes, wrongs, or acts may be admissible as proof of motive, intent, or plan.

The evidence that Taylor was attempting to sell drugs on the streets of Providence was undoubtedly prejudicial and could not have been introduced to show, for example, that Taylor was of bad character or had a propensity to break the law. It is submitted, however, that this evidence was admissible as proof of his motive, intent, or plan. It was undoubtedly relevant that Taylor's efforts to obtain money from the victim by offering marijuana for sale had failed. Consequently he attempted to improve his cash flow by robbing the victim while using the gun. This evidence also tended to corroborate identity, since his contacts with the victim in his attempts to sell gave the victim more opportunity to observe defendant.

■ Prior to trial, the trial justice rejected an effort by Taylor's counsel to preclude the state from impeaching Taylor with the introduction in evidence of a seven-year-old conviction of breaking and entering in the daytime. In *State v. Pailin*, 576 A.2d 1384, 1387 (R.I.1990), we pointed out that a trial justice is required to determine whether the prejudicial effects of the use of such evidence substantially outweighs its proba-

tive value. The trial justice, in rejecting the defense effort to preclude the use of the 1982 conviction for breaking and entering in the daytime, explained that the evidence was admissible and satisfied the mandates of Rule 609 of the Rhode Island Rules of Evidence. He emphasized that the nature of the offense, breaking and entering, did relate to one's truthfulness and veracity. He also pointed out that the conviction was by no means sufficiently remote in time to bring it outside the so-called ten-year rule of thumb that is alluded to in the commentary to Rule 609. It is obvious that the trial justice touched all the bases as he rejected the various contentions made by Taylor's trial counsel in his effort to exclude the 1982 conviction.

The defendant's appeal is denied and dismissed. The judgment of conviction appealed from is affirmed.